S96A0067. CORBETT v. THE STATE.
(468 SE2d 757)

SEARS, Justice.

Corbett was convicted of felony murder, malice murder, and cruelty to children.* For the reasons explained below, we affirm.

---

[1] In the Matter of R. John Genins, 264 Ga. 90 (442 SE2d 733) (1994).

* The murder was committed on October 20, 1993, and the acts of cruelty to children occurred prior to that date. Corbett was indicted on the three charges on February 16, 1994, and the trial was held on December 12-16, 1994. On December 16, 1994, Corbett was sentenced to life imprisonment for the malice murder conviction, and to a concurrent 20-year sentence for the cruelty to children conviction. Corbett's felony murder conviction, with cruelty to children as the underlying felony, was merged into the malice murder conviction. Corbett filed a motion for new trial on January 1, 1994, which was amended on May 12, 1995. The transcript was certified by the court reporter on February 23, 1995, and the amended new trial motion was denied on August 30, 1995. Corbett timely filed his notice of appeal

The evidence introduced at trial showed that while at home alone with his eight-month-old infant son, Corbett telephoned the emergency operator, and reported that the infant was having difficulty breathing. Both the police and emergency medical technicians responded to Corbett's call, and found that the infant was not breathing and had no pulse. When attempts to resuscitate the infant failed, he was rushed to a local hospital, where he was pronounced dead. The hospital staff noticed bruises, small scabs and wounds on the infant's body, and an investigation into the infant's death was commenced.

An autopsy performed as part of the investigation revealed that during his short life, the infant had suffered numerous bruises, scrapes, contusions, hemorrhages, and bone fractures, in addition to at least one internal hematoma. The medical examiner in charge of the autopsy concluded that the proximate cause of the infant's death was probable asphyxia, combined with battered child syndrome. At trial, evidence was introduced that the infant's injuries had been inflicted over time, some of them shortly before death, and were most likely caused by blunt force or trauma.

Before the autopsy results were known, Corbett told the police that he had been playing a video game while holding the infant. When the infant fell asleep, Corbett said, he put him in his crib. Because the infant was wheezing when he laid him down, Corbett checked on him after approximately five minutes, and discovered that he was not breathing, whereupon Corbett said that he called 911. Later that same day, Corbett told a different police officer that while holding the baby and playing a video game, he discovered that the baby had stopped breathing in his arms. Corbett told the second police officer that he had then laid the baby down, hoping that he would begin breathing again. Corbett said he went back to his video game for a few minutes, and when he discovered the infant still was not breathing, he called emergency services.

After the autopsy results were learned, Corbett again changed his story. This time he told police that he was holding the infant while playing a video game, and that the infant fell asleep in his arms. When Corbett went to place him in his crib, the infant began to cry. Corbett said that he became upset because the infant would not stop crying, and placed his hand over the infant's mouth in order to silence him. When he removed his hand, the infant was no longer breathing. Corbett then went back to his video game. When Corbett returned to the infant a few minutes later and discovered that he had not resumed breathing, he unsuccessfully attempted CPR, and then

with this Court on September 8, 1995. The appeal was docketed with this Court on October 6, 1995, and submitted for decision without oral argument on November 27, 1995.

called 911. This last statement was recorded, and played for the jury as part of the State's evidence.

1. The evidence adduced at trial, viewed most favorably to the jury's verdict, was sufficient to enable a rational trier of fact to find Corbett guilty beyond a reasonable doubt of the crimes of which he was convicted.[2]

2. Corbett claims that the trial court erred in restricting the scope of testimony that the defense could elicit from its expert medical witness, Dr. Rosedale. After voir dire, the trial court qualified Dr. Rosedale as a medical expert, excluding the field of pathology. Defense counsel objected, claiming that a properly qualified expert medical witness is qualified to testify as an expert in any field of medicine. The trial court overruled the defense's objection. Thereafter, defense counsel questioned Dr. Rosedale extensively about pathological matters, including: (1) the distinctions between a death caused by asphyxiation and one caused by sudden infant death syndrome; (2) the symptoms associated with a death caused by sudden infant death syndrome, including the external manifestations of that syndrome; and (3) a publication regarding sudden infant death syndrome. When the State finally objected to this line of questioning and testimony, arguing that it concerned "pathological findings" and thus was beyond the scope of the court's qualification of Dr. Rosedale as an expert witness, the trial court ruled that the State had waived its objection by allowing Dr. Rosedale to render expert testimony on pathological matters.

In Georgia, a medical expert is an individual "possessing technical and peculiar knowledge, and any person learned in medical or physiological matters is qualified to testify as an expert thereon, even though he is not a medical practitioner."[3] The record shows that Corbett's medical expert was a trained physician licensed to practice in Georgia. As such, he was qualified to testify on pathological matters, and the trial court erred in prohibiting such testimony.

However, we find the error to have been harmless in this case. It is uncontroverted that because the State waived its objection to Dr. Rosedale's expert testimony on matters within the field of pathology, the defense was able to question Dr. Rosedale regarding pathological matters, and Dr. Rosedale testified extensively on such matters. After the trial court ruled that the State had waived its objection, it placed no further limits upon the defense's questioning of Dr. Rosedale as a medical expert, leaving the defense unfettered in its exploration with Dr. Rosedale of relevant matters within the field of pathology. Cor-

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Avret v. McCormick*, 246 Ga. 401 (271 SE2d 832) (1980); see *Minter v. State*, 266 Ga. 73, 76 (463 SE2d 119) (1995); Agnor, Georgia Evidence, § 9-5 (1993).

bett points to no particular line of questioning that he was prevented from pursuing due to the trial court's initial limited qualification of Dr. Rosedale as a medical expert. Instead, Corbett simply argues that the trial court erred in failing to qualify the doctor as an expert in all fields of medicine. Because we find that error to have been harmless in this case, we reject Corbett's enumeration.

3. Corbett also claims that the trial court erred by admitting into evidence certain hospital records. At trial, the State tendered hospital records pertaining to the hospital's admission and treatment of the infant. Defense counsel timely objected, arguing that the records contained opinions and impressions that were not excepted from the hearsay rule. When asked by the trial court to identify the portions of the hospital records that were objectionable, defense counsel stated that the hospital records in their entirety, save the notice of death, were inadmissible. The court responded by leaving the trial record open in order to permit defense counsel to review the hospital records and determine what portions of them were objectionable. At the close of evidence, defense counsel again interposed the same general objection to all of the hospital records, and did not identify any specific portions as violative of the rule against hearsay.

After redacting all references to child abuse from the hospital records, the trial court found that the records contained objective findings, as opposed to opinions and conclusions, and were cumulative of other testimony, and therefore were admissible. In this last regard, the trial court made special note that Corbett's expert witness, Dr. Rosedale, based his expert testimony in part upon his review of the hospital records that Corbett claimed were objectionable. The trial court also noted that the records were cumulative of the testimony previously rendered by the emergency medical technicians who attempted to treat the infant. On appeal, Corbett again fails to identify any particular portions of the records that were inadmissible, and instead reasserts his general claim that because the records, at least in part, contain opinions and conclusions, they are entirely subject to the rule against hearsay.

Hospital records are admissible as records made in the regular course of a business to the extent that they record an act, transaction, occurrence, or event in the regular course of business at a hospital.[4] To the extent that hospital records contain diagnostic opinions and impressions of third parties not before the court, they may run afoul of the rule against hearsay.[5] Our review of the hospital records that

---

[4] See OCGA § 24-3-14; *Moody v. State*, 244 Ga. 247, 249 (260 SE2d 11) (1979); see also *Baker v. State*, 251 Ga. 464 (306 SE2d 917) (1983); *Giles v. Taylor*, 166 Ga. App. 563 (305 SE2d 154) (1983).

[5] *Baker*, supra; see Agnor, supra, § 11-37.

Corbett complains of in this case reveals that they contain many re-cordations of acts, transactions, occurrences, and events that are nor-mally recorded during the course of a hospital's business, and thus those portions of the records clearly are excepted from the rule prohibiting the admission of hearsay, and thus were properly admit-ted by the trial court.

When a document is offered into evidence that is admissible in part and inadmissible in part, and a general objection is raised to the document as a whole, without identifying the specific portions of the document that are inadmissible, it is not error to admit the entire document.[6] In this case, the trial court offered defense counsel two opportunities to identify the objectionable portions of the hospital records, and the record was left open for a time in order to allow counsel to review the records for that purpose. Despite this, counsel failed to identify for the trial court any objectionable portions of the hospital records. Corbett's failure in the trial court to specify the grounds of his hearsay objection to the hospital records, despite hav-ing been given adequate opportunity to do so, resulted in a waiver of Corbett's hearsay objection to the hospital records, rendering this issue inadequately preserved for review on appeal.[7]

4. We have reviewed Corbett's other enumerations, and find them to be either not adequately preserved on appeal, or meritless.[8]

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 15, 1996.

*Mark B. Beberman,* for appellant.

*Spencer Lawton, Jr.,* District Attorney, *Greg M. McConnell,* As-sistant District Attorney, *Michael J. Bowers,* Attorney General, *Su-san V. Boleyn,* Senior Assistant Attorney General, *Beth Attaway,*

---

[6] *CSX Transp. v. McCord,* 202 Ga. App. 365, 366 (414 SE2d 508) (1991); *Stubbs v. Daughtry,* 115 Ga. App. 22, 24 (153 SE2d 633) (1967).

[7] *CSX Transp.,* 202 Ga. App. at 366. We also note that Corbett's argument that the hospital records in their entirety were inadmissible hearsay is inherently illogical. The trial record reveals that Dr. Rosedale stated that his expert testimony was based in relevant part upon his review of the very hospital records that Corbett claims contained inadmissible hear-say. Thus, on the one hand Corbett has treated the hospital records as a sufficiently reliable basis for his own expert's opinion, while on the other hand he claims that the records are not trustworthy for purposes of satisfying the general rule against hearsay.

[8] These include claims that the trial court erred in (1) refusing to declare a mistrial due to alleged improper questioning by the State of Corbett's expert witness; (2) allowing the State to cross-examine Corbett's witness by using hypothetical questions; (3) denying Cor-bett's motion for directed verdict as to the cruelty to children charge, and (4) refusing to sustain Corbett's *Batson* challenge to the State's use of a peremptory strike against one pro-spective juror, when the State offered a race-neutral reason for its use of the strike.

*Assistant Attorney General,* for appellee.