## S03A0017. MESSICK v. THE STATE.
### (580 SE2d 213)

FLETCHER, Chief Justice.

A jury convicted Shane August Messick of the malice murder of Thomas James Hampton and Brandi Hampton.[1] Messick contends that the prosecutor violated a stipulation when he argued that the defendant made a bloody footprint found at the murder scene. Because the prosecutor's argument did not violate the parties' stipulation and his statement could be reasonably inferred from other evidence, we affirm.

1. The evidence presented at trial shows that the Hamptons' next-door neighbor heard firecrackers around 9:00 p.m. on July 2, looked out a window, and saw a red Mustang drive off at a high rate of speed. When she hollered for Brandi Hampton, the Hamptons' young son came running out of the house and across the yard, crying "Mommy's dead." A neighbor who lived across the highway heard six to eight gunshots, ran into her front yard, and saw a small red car taking off "like a scalded dog" towards town. Two Cedartown residents saw a red car at dusk speed down their narrow street to a cemetery that is located one street over from Messick's house.

Police found the Hamptons lying dead on their living room floor. Tommy Hampton had been shot once in the forehead at close range and three times in the back, and Brandi Hampton had been shot in the head, chest, and arm. A firearms examiner testified that the cartridge cases and bullets recovered at the scene were fired from Messick's FEG 9-millimeter pistol, which police obtained from his family.

Messick's accomplice, Jamie Crawford, pled guilty to the two murders and testified at trial. Crawford said that he borrowed his sister's red Mustang to drive Messick to the Hamptons' house and that Messick shot Tommy Hampton in the head before shooting Brandi Hampton. The state introduced a tape-recorded conversation between Crawford and Messick on July 10 in which Messick says that the gun is gone and "they got us both." In addition, three prisoners testified that Messick told them he killed Tommy Hampton because Hampton owed him money from a drug deal and also because Messick wanted to see what it felt like to take a life. After reviewing the evidence in the light most favorable to the jury's deter-

---

[1] The shootings occurred on July 2, 1998, and Messick was indicted on July 21, 1998. A jury found him guilty of two counts of malice murder and one count of cruelty to children on September 21, 2001. The trial court sentenced Messick to two consecutive terms of life imprisonment on the murder counts and a concurrent 20-year term of imprisonment on the cruelty to children count. Messick filed a motion for new trial on October 11, 2001, which was denied on June 25, 2002. Messick filed a notice of appeal on July 24, 2002; the record was filed in the clerk's office on September 5, 2002; and the case was orally argued on January 21, 2003.

mination of guilt, we conclude that a rational trier of fact could have found Messick guilty of the offenses of malice murder and cruelty to children.[2]

2. Messick contends that the trial court erred in allowing the State to argue that the bloody footprint found at the murder scene was his print. At the close of the prosecution's case, the parties stipulated that the boots seized from Messick on July 9 did not make the bloody shoe impression found on the carpet at the crime scene and that the boots seized from Crawford could not be eliminated as having made the imprint. During closing argument, the prosecutor stated:

> Now there were two defendants, one police officer, three EMTs and one neighbor who went into Tommy and Brand[i] Hampton's house before the scene was secured. . . . But the point is, it certainly could have been Jamie Crawford stepping in the blood, and it could be Shane Messick's foot print in the blood.

OCGA § 17-8-75 provides that trial courts have the duty to interpose and prevent attorneys from making statements on prejudicial matters that are not in evidence. Although it is improper for an attorney during closing arguments to introduce facts that are not in evidence, counsel may draw reasonable inferences or deductions from the evidence.[3] Here, the prosecutor made a reasonable inference from the evidence that either Crawford or Messick could have stepped in the blood and left the footprint while they were leaving the Hamptons' house after the murder. The statement did not violate the State's narrow stipulation, which merely eliminated a single pair of Messick's boots as the source of the footprint; there was no stipulation or evidence that the seized boots were the ones he wore that night. As a result, the closing argument did not violate OCGA § 17-8-75 or the defendant's due process right to confront witnesses.

3. Messick contends that the trial court erred in excluding the hearsay statements of Billy Hicks to Susan Cotton that he committed the murders. The trial court properly ruled that Hicks's statements to Cotton were not admissible as the prior inconsistent statement of a co-conspirator because Hicks was not a suspect, much less a co-conspirator, and he did not testify at trial.[4] In addition, the hearsay statements were not admissible as a statement against interest: " 'It

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See *McClain v. State*, 267 Ga. 378, 384 (477 SE2d 814) (1996); *Hicks v. State*, 196 Ga. 671 (27 SE2d 307) (1943).

[4] See *Brown v. State*, 266 Ga. 633, 635 (469 SE2d 186) (1996).

is the long-standing rule in this state that declarations to third persons against the declarant's penal interest, to the effect that the declarant, and not the accused, was the actual perpetrator of the offense, are not admissible in favor of the accused at his trial.' "[5] Finally, the trial court properly ruled that Hicks's statements to Cotton, a self-described acquaintance, at the end of an all-day drinking session ten days after the murder lacked sufficient guarantees of trustworthiness and, therefore, were not admissible under the necessity exception to the hearsay rule.[6]

4. Finally, Messick has shown no error or harm from the reciting of the pledge of allegiance after observing a moment of silence in memory of the victims of September 11, 2001.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 29, 2003.

*Cook & Connelly, Bobby Lee Cook, Todd M. Johnson*, for appellant.

*Gerry E. Holmes, District Attorney, Charles M. Norman, Fred A. Lane, Jr., Assistant District Attorneys, Thurbert E. Baker, Attorney General, Ruth M. Pawlak, Assistant Attorney General*, for appellee.

---

[5] *Stanford v. State*, 272 Ga. 267, 269 (528 SE2d 246) (2000) (quoting *Timberlake v. State*, 246 Ga. 488 (271 SE2d 792) (1980)).

[6] See *Yancey v. State*, 275 Ga. 550, 553, 556-557 (570 SE2d 269) (2002).