**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 30, 2015**

# In the Court of Appeals of Georgia

A15A0321. HARTZLER v. THE STATE.

DILLARD, Judge.

A jury convicted Colon Louis Hartzler of two counts of homicide by vehicle in the first degree, driving under the influence less safe, driving under the influence per se, making false statements, and a seat-belt violation. Hartzler appeals, arguing that the evidence was insufficient to support his vehicular-homicide convictions; and that the trial court erred by admitting evidence of his blood-alcohol content in violation of the Confrontation Clause, improperly charging the jury that the negligence of the victim was irrelevant for purposes of establishing causation, and improperly expressing an opinion on his guilt. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on June 25, 2010, Hartzler and the victim spent the day together drinking beer and "off roading" or "mudding" in Hartzler's jeep, which had no doors. And later that evening, Hartzler drove the victim toward a restaurant, where she planned to meet some friends. They were traveling north on Georgia 400 and, at approximately 10:22 p.m., they reached the intersection where the restaurant was located. Then, Hartzler, driving at a speed of no less than 18 miles per hour, took a sharp left turn, and the victim, who was not wearing a seatbelt, was ejected from the vehicle and onto the middle of the highway.

After the victim was thrown from the jeep, Hartzler drove another 70 feet, but he eventually stopped and walked back onto the unlit highway towards the victim. And as Hartzler was standing over her, a minivan struck him and then ran over the victim. Another motorist who witnessed the collision called 911, and law enforcement and medical personnel responded to the scene. Hartzler sustained serious injuries and was air lifted to an area hospital for treatment. Tragically, the victim died.

Several individuals who responded to the scene testified that they smelled the strong odor of alcohol emanating from Hartzler. His jeep also smelled strongly of

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

alcohol, and there was a cooler inside it, which contained a spilled alcoholic beverage. After the collision, while Hartzler was still at the hospital, a law-enforcement officer read him an implied-consent notice and requested that he submit to a blood test, but Hartzler refused. Later, in a taped interview, Hartzler admitted that he and the victim had taken approximately 18 beers with them to go mudding, but he claimed that he only drank 4 beers and that he stopped drinking at 5:00 p.m. Eventually, the police obtained a warrant for Hartzler's medical records, which revealed that a few hours after the accident his blood-alcohol content was .19 grams, more than twice the legal limit.

In a nine-count indictment, Hartzler was charged with three counts of first-degree homicide by vehicle, driving under the influence less safe, driving under the influence per se, reckless driving, making false statements, a reflector violation, and a seat-belt violation. And after a jury trial, Hartzler was acquitted of one count of first-degree homicide by vehicle and the reckless-driving count. The court also granted a directed verdict of acquittal as to the reflector-violation count, but the jury found Hartzler guilty of all the remaining charges. Thereafter, Hartzler filed a motion for a new trial, which the trial court denied. This appeal follows.

1. Hartzler first argues that the evidence was insufficient to support his first-degree vehicular-homicide convictions because the State failed to establish a sufficient causal connection between his intoxication and the events leading up to the victim's death. We disagree.

To begin with, we note that when a criminal conviction is appealed, the evidence must be viewed "in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[2] And, of course, in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] Thus, we will uphold a jury's verdict so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] Bearing these guiding principles in mind, we turn now to Hartzler's specific claim of error.

---

[2] *Sowell v. State*, 327 Ga. App. 532, 534 (759 SE2d 602) (2014).

[3] *Lee v. State*, 317 Ga. App. 507, 508 (731 SE2d 768) (2012) (punctuation omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LEd2d 560) (1979).

[4] *Sowell*, 327 Ga. App. at 534 (punctuation omitted).

4

Our analysis begins with OCGA § 40-6-393 (a), which provides that "[a]ny person who, without malice aforethought, causes the death of another person through the violation of subsection (a) of Code Section . . . 40-6-391 [driving under the influence of alcohol], . . . commits the offense of homicide by vehicle in the first degree . . . ."[5] And OCGA § 40-6-391 provides, in relevant part, that "[a]person shall not drive or be in actual physical control of any moving vehicle while [u]nder the influence of alcohol to the extent that it is less safe for the person to drive;"[6] or "[t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended."[7]

Without citing to any legal authority, except for the standard of review for sufficiency-of-the-evidence claims, Hartzler summarily asserts that the evidence was insufficient to support his vehicular-homicide convictions because (1) there were significant "intervening causes," such as the jeep having no doors and the victim's intoxication and failure to wear a seat belt; (2) the coroner testified that the cause of

[5] OCGA § 40-6-393 (a).

[6] OCGA § 40-6-391 (a) (1).

[7] OCGA § 40-6-391 (a) (5).

death was an accident; and (3) there was an insufficient causal connection between any act of driving under the influence and the victim's death.

To find a defendant guilty of first-degree vehicular homicide in Georgia, a jury must conclude that the defendant's conduct was "the 'legal' or 'proximate' cause, as well as the cause in fact, of the death."[8] And an injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence that "the act or omission played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission."[9] Further, what constitutes proximate cause is "undeniably a jury question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent."[10]

---

[8] *Kirk v. State*, 289 Ga. App. 125, 127 (656 SE2d 251) (2008) (punctuation omitted); *accord Ponder v. State*, 274 Ga. App. 93, 95 (1) (616 SE2d 857) (2005).

[9] *Kirk*, 289 Ga. App. at 127 (punctuation omitted); *accord Ponder*, 274 Ga. App. at 95 (1); *see Fletcher v. State*, 307 Ga. App. 131, 132 (2) (a) (704 SE2d 222) (2010) ("Inasmuch as defendant's conduct was a 'substantial factor' in causing the victim's death, it was a proximate cause of the victim's death." (punctuation omitted)).

[10] *McGrath v. State*, 277 Ga. App. 825, 829 (1) (627 SE2d 866) (2006) (punctuation omitted); *accord Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862)

As to the evidence in this case, a motorist—who observed Hartzler make the left turn during which the victim was thrown from his jeep—described Hartzler's driving as "faster than normal and careless." Further, at least five witnesses testified that, when they responded to the scene, they smelled the strong odor of alcohol emanating from Hartzler. And one witness—who saw Hartzler walk out into the highway toward the victim—testified that he was "stumbling" and "pretty relaxed, almost as if he was drunk." Indeed, Hartzler's medical records confirmed that, on the night in question, his blood-alcohol content was more than twice the legal limit. Thus, under these particular circumstances, there was sufficient evidence for a jury to find that Hartzler's conduct of driving while impaired by alcohol and taking a faster than normal turn in a door-less jeep, thereby causing his passenger to be thrown from the vehicle, "played a substantial part in bringing about [her] death and that [her] death was a reasonably probable consequence of [his] actions."[11]

---

(2003); *Reed v. Carolina Cas. Ins. Co.*, 327 Ga. App. 130, 132 (2) (762 SE2d 90) (2014).

[11] *Ponder*, 274 Ga. App. at 95-96 (1) (punctuation omitted); *see also Jones v. State*, 313 Ga. App. 590, 592-93 (1) (722 SE2d 202) (2012) (holding that evidence was sufficient to sustain first-degree vehicular-homicide convictions when defendant, who had a blood-alcohol content of nearly twice the legal limit, veered across three lanes of traffic and struck another vehicle, killing its occupants); *Brown v. State*, 310 Ga. App. 285, 285-86 (1) (712 SE2d 521) (2011) (holding that evidence the

2. Next, Hartzler argues that the trial court's admission of his medical records, which revealed his blood-alcohol content, violated the Confrontation Clause of the United States Constitution[12] because no one with personal knowledge of the testing testified at trial. Again, we disagree.[13]

---

defendant had a blood-alcohol concentration of .164 at the time when his car veered and hit a tree, killing his passenger, was sufficient to support defendant's first-degree vehicular-homicide conviction); *McGrath*, 277 Ga. App. at 826-30 (1) (affirming a defendant's conviction for vehicular homicide when he was under the influence of methamphetamine at the time of a car accident and rejecting his argument that the victim, who was tending to injuries at the scene of the accident, died as a result of intervening causes because she put herself in an unsafe situation and was struck by another driver who was speeding); *Lyons v. State*, 248 Ga. App. 59, 61 (3) (545 SE2d 614) (2001) (holding that evidence was sufficient to show that driving under the influence of alcohol was the proximate cause of the victim's death when the defendant drank alcohol prior to the collision and then drove in poor weather conditions); *Whitener v. State*, 201 Ga. App. 309, 311-12 (3), (4) (410 SE2d 796) (1991) (holding that evidence was sufficient to support first-degree vehicular-homicide conviction when the defendant's conduct of crossing the center line of the road was a substantial factor in causing the victim's death and noting that "[t]he victim's failure to wear a safety belt does not bear on the criminal conduct of defendant" (punctuation omitted)).

[12] *See* U.S. Const. amend VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."); *see also* Ga. Const. art. 1, § 1, ¶ XIV ("Every person charged with an offense against the laws of this state . . . shall be confronted with the witnesses testifying against such person.").

[13] The State argues that Hartzler waived this claim of error because the trial transcript does not reflect that he specifically objected to the testimony regarding his blood-alcohol content on the basis that it violated the Confrontation Clause. However, in its order denying Hartzler's motion for a new trial, the trial court noted

8

At the outset, we note that, as a general rule, "admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse."[14] In *Crawford v. Washington*,[15] the Supreme Court of the United States held that "the admission of out-of-court statements that are testimonial in nature violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination."[16] And statements are "testimonial in nature" when the "primary purpose of the statements is to establish or prove past events potentially relevant to later criminal prosecution."[17] But statements made by witnesses to

that the defense had indeed made a "lengthy objection" to this testimony in chambers, that it was not made part of the record, and that the basis for the objection was both hearsay and a violation of the Confrontation Clause. Thus, like the trial court, we find that the issue was timely raised at trial, and therefore, preserved for appeal. *See Vanstavern v. State*, 293 Ga. 123, 124 (2) (744 SE2d 42) (2013); *Stacey v. State*, 292 Ga. 838, 843 (4) (741 SE2d 881) (2013).

[14] *Adams v. State*, 316 Ga. App. 1, 3 (1) (728 SE2d 260) (2012) (punctuation omitted).

[15] 541 U.S. 36 (124 SCt. 1354, 158 LEd2d 177) (2004).

[16] *Hester v. State*, 283 Ga. 367, 370 (4) (659 SE2d 600) (2008) (punctuation omitted); *accord Cuyuch v. State*, 284 Ga. 290, 291-92 (2) (667 SE2d 85) (2008).

[17] *Cuyuch*, 284 Ga. at 291 (2) (punctuation omitted), *citing Davis v. Washington*, 547 U.S. 813, 822 (126 SCt. 2266, 165 LEd.2d 224) (2006).

"questions of investigating officers are nontestimonial when they are made primarily to enable police assistance to meet an ongoing emergency."[18]

As previously noted, Hartzler argues that the admission of testimony regarding the blood-test results contained in his medical records violated the Confrontation Clause because the doctor who testified about the records played no role in performing the blood test. The Supreme Court of Georgia, however, has expressly held that "[m]edical records created for treatment purposes are not testimonial."[19] And here, Hartzler's medical records are not testimonial in nature because "the circumstances surrounding their creation and the statements and actions of the parties objectively indicate that the records were prepared with a primary purpose of facilitating [his] medical care."[20] Thus, unlike other cases involving blood tests

---

[18] *Cuyuch*, 284 Ga. at 292 (2) (punctuation omitted); *accord Sanford v. State*, 287 Ga. 351, 354 (3) (695 SE2d 579) (2010).

[19] *Bowling v. State*, 289 Ga. 881, 888 (3) (717 SE2d 190) (2011); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 (III) n.2 (129 SCt 2527, 174 LEd 2d 314) (2009) (noting that medical records for treatment purposes are not testimonial in nature).

[20] *Bowling*, 289 Ga. at 887 (3); *see Dunn v. State*, 292 Ga. App. 667, 671 (1) (665 SE2d 377) (2008) (explaining that, when a physician orders a blood test for a patient, the physician's diagnosis is testimonial, but the lab results are not "statements" in any meaningful sense); *see also Hester*, 283 Ga. at 371-72 (4) (holding that a paramedics interrogation of an injured person did not produce

10

performed in a forensic lab at the request of law-enforcement officers, Hartzler's

blood was not drawn and tested as part of an ongoing criminal investigation or for the

purpose of aiding in his prosecution.[21] In fact, a law-enforcement officer sought

Hartzler's consent to conduct such testing, but he flatly refused. Thus, under these

particular circumstances, Hartzler's medical records and the testimony from a doctor

regarding those records were not testimonial in nature, and therefore, the admission

of this evidence did not violate his rights under the Confrontation Clause.[22]

---

testimonial statements because the statements were made for the purpose of medical diagnosis or treatment and there was no indication that the information was being collected for a potential criminal prosecution); *Freeman v. State*, 328 Ga. App. 756, 759 (2) (760 SE2d 708) (2014) (same).

[21] *See Hester*, 283 Ga. at 370 (4) ("[Statements] are testimonial when the circumstances objectively indicate that there is no [ ] ongoing emergency, and that the *primary purpose* of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (emphasis supplied) (punctuation omitted)); *Cuyuch*, 284 Ga. at 292 (2) (same); *Rackoff v. State*, 281 Ga. 306, 309 (2) (637 SE2d 706) (2006) (holding that an inspection certificate showing breath-test results, which was prepared pursuant to a Georgia statute in the regular course of business, was not testimonial hearsay under *Crawford* because it was not generated in anticipation of the prosecution of a particular defendant).

[22] *See Bowling*, 289 Ga. at 887-88 (3) (holding that admission of defendant's medical records did not violate the Confrontation Clause when they were prepared for the primary purpose of facilitating his medical care); *see also Dixon v. State*, 227 Ga. App. 533, 536-37 (4) (489 SE2d 532) (1997) (holding that, because hospital records showing the defendant's blood test results were properly admitted under the business-records exception to the hearsay rule, it bore the "indicia of reliability"

11

3. Hartzler also argues that the trial court's jury instruction on causation was overly broad and improperly instructed that any negligence on the part of the victim was irrelevant. This claim is without merit.

As an initial matter, we note that appellate review of a jury charge is *de novo*.[23] And in Georgia, the only requirement regarding jury charges is that "the charges, as given, were correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence."[24]

---

sufficient to satisfy the Confrontation Clause, even when the defendant was not given the opportunity to cross-examine the person who performed the test). We note that, once a determination is made that a statement is nontestimonial for purposes of the Confrontation Clause, the statement is "admissible if it falls under one or more exceptions to the rule against hearsay." *Owens v. State*, 329 Ga. App. 455, 458 (1) (b) (765 SE2d 653) (2014); *see Glover v. State*, 285 Ga. 461, 462 (2) (678 SE2d 476) (2009) ("Once a determination is made that a statement is nontestimonial in nature, normal rules regarding the admission of hearsay apply." (punctuation omitted)). In this case, Hartzler's medical records were admitted under the business-records exception to the rule against hearsay, and he does not challenge that ruling on appeal. Thus, we do not address whether the records constituted inadmissible hearsay. *Jackson v. State*, 316 Ga. App. 128, 132 (3) (728 SE2d 774) (2012) (deeming a claim abandoned when the appellant did not offer argument or citation to the record or legal authority to support it).

[23] *See Jordan v. State*, 322 Ga. App. 252, 255 (4) (a) (744 SE2d 447) (2013).

[24] *Williamson v. State*, 308 Ga. App. 473, 478 (2) (708 SE2d 57) (2011) (punctuation omitted); *accord Corbin v. State*, 305 Ga. App. 768, 771 (2) (700 SE2d 868) (2010); *see e.g., Foote v. State*, 265 Ga. 58, 60-61 (2)-(3) (455 SE2d 579) (1995).

And here, in relevant part, the trial court charged the jury as follows:

A person commits the offense of homicide by vehicle in the first degree when without malice aforethought that person causes the death of another person by driving any vehicle in such a manner as to be in reckless disregard for the safety of persons or property, or by driving or being in actual physical control of any moving vehicle while under the influence of alcohol to a degree that renders the person incapable of safely driving.

Proximate cause exists when the defendant's act played a substantial part in bringing about or actually causing the victim's death, and the death was either a direct result or a reasonably probable consequence of the act.

If you find based on all the facts and circumstances of this case that the defendant's conduct was a substantial factor in causing the victim's death, then any negligence on the part of the decedent would be irrelevant.

Hartzler now argues that the trial court's instruction that, to convict him of first-degree vehicular homicide, the jury must find that his conduct was a "substantial factor" in causing the victim's death was overly broad and that the court erred by failing to explain that the jury must find a causal connection between his conduct and the victim's death. However, as discussed in Division 1 *supra*, we have repeatedly

13

held that a defendant's conduct is a proximate cause of a victim's death if it was a "substantial factor" in causing it and that it was either a direct result or a reasonably probable result of the defendant's conduct.[25]

Hartzler also asserts that the trial court erroneously instructed the jury that any negligence on the part of the victim was irrelevant. But we have also previously held that, if the defendant's conduct was a substantial factor in causing the victim's death, any negligence on the part of the victim is not relevant.[26] Thus, the trial court's instruction regarding causation was not erroneous because it was a correct statement of law and would not mislead a juror of average intelligence.[27]

---

[25] *See supra* notes 9 & 11.

[26] *See Fletcher*, 307 Ga. App. at 132 (2) (a) (explaining that "[a]s opposed to the civil context, in which compensating deserving victims is the aim, in the criminal context it simply is not relevant that the victim was negligent, unless the defendant's conduct did not substantially contribute to the cause of death" (punctuation omitted)); *accord Corbett v. State*, 277 Ga. App. 715, 718 (1) (b) (627 SE2d 365) (2006); *see also McGrath*, 277 Ga. App. at 832 (3) ("[I]n the criminal context, the victim's negligence is not relevant unless the defendant's conduct did not substantially contribute to the cause of the injury.")

[27] *See Williamson*, 308 Ga. App. at 479 (2) (rejecting defendant's challenge to a jury charge when it fully covered the relevant law); *Corbin*, 305 Ga. App. at 771 (2) (same).

4. Lastly, Hartzler contends that the trial court improperly expressed an opinion on the evidence when it referred to the decedent as the "victim" twice when instructing the jury on proximate cause. Once again, we disagree.

Under OCGA § 17-8-57, "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." And in order to determine whether a trial court has improperly expressed an opinion in its charge as to what has or has not been proved, "the whole charge may be considered."[28]

In its jury instruction on proximate cause, the trial court twice referred to the decedent as the "victim" and Hartzler contends that, in doing so, the court improperly expressed an opinion as to his guilt by suggesting that the decedent died as a result of a crime, rather than an accident. But our Supreme Court has held that the use of the word "victim" in referring to the deceased does not "amount to an improper comment

---

[28] *Robinson v. State*, 267 Ga. App. 634, 636 (2) (600 SE2d 729) (2004) (punctuation omitted); *see Rouse v. State*, 296 Ga. 213, 224 (1) (c) (765 SE2d 879) (2014) (noting that OCGA § 17-8-57 is "violated only when the trial court's instruction, considered as a whole, assumes certain things as facts and intimates to the jury what the judge believes the evidence to be" (punctuation omitted)); *Johnson v. State*, 289 Ga. 650, 653 (2) (715 SE2d 99) (2011) (noting that jury instructions must be read as a whole).

on the guilt of the accused."[29] Furthermore, considering the jury charge as a whole, we note that the trial judge specifically instructed the jury that "by no ruling or comment that the court has made during the progress of the trial have I intended to express any opinion on the facts of the case, the credibility of the witnesses, the evidence or what your verdict should be. The court has *no opinion* as to what your verdict should be."[30] Thus, the trial court did not err by referring to the deceased as "the victim" in its jury instruction on proximate cause.[31]

For all of the foregoing reasons, we affirm Hartzler's convictions.

*Judgment affirmed. Ellington, P. J., and McFadden, J., concur.*

---

[29] *Jones v. State*, 281 Ga. 758, 759 (2) (642 SE2d 816) (2007); *see Sedlak v. State*, 275 Ga. 746, 748-49 (2) (d) (571 SE2d 721) (2002) (holding that the trial court's reference to the deceased as "the victim" in the course of charging the jury did not constitute an expression of opinion as to the guilt of the accused).

[30] *See Sedlak*, 275 Ga. at 748-49 (2) (d) (holding that, when the trial court instructed that the jury not to construe any comment made by the court as an expression of opinion of the guilt or innocence of the accused, there was neither error nor a reasonable probability that the reference to the decedent as "the victim" prejudiced the defense).

[31] *See id.*