**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 25, 2016**

# In the Court of Appeals of Georgia

A15A1804. SAMUELS v. THE STATE.

DILLARD, Judge.

Following trial, a jury convicted Martina Samuels of one count of driving under the influence of alcohol to the extent it was less safe for her do to so (DUI less safe) and one count of disorderly conduct. On appeal, Samuels contends that the trial court erred in admitting hospital records because these records constituted hearsay and violated her right to confrontation, and in failing to rebuke the State's prosecutor and provide sufficient curative instructions when the prosecutor made improper comments during closing argument. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that around 10:30 p.m. on May 22, 2012, the Savannah-Chatham Metropolitan Police

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

Department received a 911 call from a motorist traveling on a nearby section of the interstate, indicating that another vehicle had been involved in an accident. Within a few minutes, a dispatched patrol officer arrived on the scene and observed that an SUV had crashed into the guardrail on the shoulder of the interstate, spun around, and come to rest facing oncoming traffic. Upon making contact with the driver of the SUV (ultimately identified as Samuels), and the three passengers, the officer determined that no one seemed to be seriously injured. However, the officer also noticed an alcoholic-beverage odor upon speaking with Samuels.

Shortly thereafter, two other patrol officers arrived on the scene, and both also noticed an alcoholic-beverage odor when speaking to Samuels. In addition, one of the officers observed that Samuels seemed unsteady on her feet and slurred her speech. Samuels admitted to drinking a beer earlier that afternoon, and one of the officers administered an alco-sensor breath test, which returned a positive result. One of the officers then asked Samuels to perform the ABC test, which she failed. Consequently, the officers decided that Samuels was impaired and, therefore, arrested her for DUI less safe. At that point, Samuels became belligerent and began punching one of the officers. But the officers quickly subdued and handcuffed her, and EMTs then transported her to the hospital. There, Samuels refused treatment and the State-

administered breath test, and one of the officers took her to jail after hospital staff confirmed that she was not seriously injured.

The State later charged Samuels, via accusation, with one count each of DUI less safe, endangering a child by DUI, driving too fast for conditions, disorderly conduct, and simple battery. At Samuels's trial, the three police officers who were dispatched to the scene of the accident testified regarding their investigation, and the State introduced, over Samuels's objection, hospital records, which were completed the night of the accident and which noted that Samuels presented as "intoxicated." Samuels also testified in her own defense, and at the conclusion of her trial, the jury convicted her on the charges of DUI less safe and disorderly conduct but acquitted her on all the other charges. Subsequently, Samuels filed a motion for new trial, which the trial court denied. This appeal follows.

1. In her first enumeration of error, Samuels contends that the trial court erred in admitting the hospital records, which stated that she presented as "intoxicated." Specifically, she argues that the records constituted inadmissible hearsay, not subject

to the business-records exception, and violated the Sixth Amendment's Confrontation Clause.[2] We disagree.

At the outset, we note that, as a general rule, "admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse."[3] Turning first to Samuels's contention that the hospital records violated her Sixth Amendment right to confront witnesses, in *Crawford v. Washington*,[4] the Supreme Court of the United States held that "the admission of out-of-court statements that are testimonial in nature violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination."[5] And statements are "testimonial in nature" when their "primary purpose" is to "establish or prove past

---

[2] *See* U.S. CONST. amend VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."); *see also* GA. CONST. art. 1, § 1, Par. XIV ("Every person charged with an offense against the laws of this state . . . shall be confronted with the witnesses testifying against such person.").

[3] *Adams v. State*, 316 Ga. App. 1, 3 (1) (728 SE2d 260) (2012) (punctuation omitted); *accord Smith v. State*, 302 Ga. App. 128, 130 (1) (690 SE2d 449) (2010).

[4] 541 U.S. 36 (124 SCt 1354, 158 LE2d 177) (2004).

[5] *Hester v. State*, 283 Ga. 367, 370 (4) (659 SE2d 600) (2008) (punctuation omitted); *accord Pitts v. State*, 280 Ga. 288, 288 (627 SE2d 17) (2006).

4

events potentially relevant to later criminal prosecution."[6] Nevertheless, statements made by witnesses to questions of investigating officers are "nontestimonial when they are made primarily to enable police assistance to meet an ongoing emergency."[7]

Here, the hospital records at issue consist primarily of an "Emergency Department Assessment Sheet," which on the first page under "Triage/Initial Assessment" notes that "PT PRESENTS TO ER S/P MVC AND INTOXICATED. NEEDS TO BE CLEARED TO GO TO JAIL." Samuels argues that the admission of this document violated the Confrontation Clause because no one responsible for completing the form testified at trial. However, the Supreme Court of Georgia has specifically held that "[m]edical records created for treatment purposes are not testimonial."[8] And in this matter, Samuels's hospital records are not testimonial in nature because "the circumstances surrounding their creation and the statements and

---

[6] *Hartzler v. State*, 332 Ga. App. 674, 678-79 (2) (774 SE2d 738) (2015) (punctuation omitted); *accord Cuyuch v. State*, 284 Ga. 290, 291-92 (2) (667 SE2d 85) (2008).

[7] *Hartzler*, 332 Ga. App. at 679 (2) (punctuation omitted); *accord Cuyuch*, 284 Ga. at 292 (2).

[8] *Bowling v. State*, 289 Ga. 881, 888 (3) (717 SE2d 190) (2011); *accord Hartzler*, 332 Ga. App. at 679 (2); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 (III) n.2 (129 SCt 2527, 174 LE2d 314) (2009) (noting that medical records for treatment purposes are not testimonial in nature).

actions of the parties objectively indicate that the records were prepared with a primary purpose of facilitating [her] medical care."[9] Indeed, despite describing Samuels as intoxicated, the records at issue were not requested by the investigating police officers for the purpose of aiding the State's prosecution, but rather, were simply emergency room intake forms that are completed for *every* incoming patient. Given these particular circumstances, the hospital records were not testimonial in nature, and thus, their admission did not violate Samuels's rights under the Confrontation Clause.[10]

Turning now to Samuels's hearsay objection to the records, this Court has previously held that "[o]nce a determination is made that a statement is nontestimonial for purposes of the Confrontation Clause, the statement is admissible

---

[9] *Bowling*, 289 Ga. at 887 (3); *see also Hartzler*, 332 Ga. App. at 679-80 (2) (holding that defendant's medical records, and testimony regarding the blood-test results contained in his medical records, were not testimonial in nature, and thus, their admission did not violate the Confrontation Clause).

[10] *See Bowling*, 289 Ga. at 887-88 (3) (holding that admission of defendant's medical records did not violate the Confrontation Clause when they were prepared for the primary purpose of facilitating his medical care); *Hartzler*, 332 Ga. App. at 679-80 (2) (same).

if it falls under one or more exceptions to the rule against hearsay."[11] In this matter, prior to Samuels's trial, the State filed a notice of its intent to offer records into evidence[12] under OCGA §§ 24-8-803 and 24-9-902.[13] And following pretrial argument, the trial court ruled that the hospital records were admissible under OCGA § 24-8-803 (6), the business-records exception to hearsay. Samuels argues that the trial court erred in doing so, but we disagree.

In considering this aspect of Samuels's argument, we necessarily begin our analysis with the text of OCGA § 24-8-803 (6), which provides:

---

[11] *Owens v. State*, 329 Ga. App. 455, 458 (1) (b) (765 SE2d 653) (2014); *see also Thomas v. State*, 284 Ga. 540, 543-44 (668 SE2d 711) (2008) ("Once a determination is made that a statement is nontestimonial in nature, normal rules regarding the admission of hearsay apply.") (punctuation and citation omitted).

[12] Because this case was tried after January 1, 2013, our new Evidence Code applies. *See* Ga. L. 2011, pp. 99, 214, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

[13] OCGA § 24-9-902 (11) provides that "[t]he original or a duplicate of a domestic record of regularly conducted activity that would be admissible under paragraph (6) of Code Section 24-8-803 if accompanied by a written declaration of its custodian or other qualified person certifying that the record . . . was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of such matters; [w]as kept in the course of the regularly conducted activity; and [w]as made by the regularly conducted activity as a regular practice." It is worth noting that Samuels does not argue that the State failed to comply with this statute in submitting the records for admission.

7

Unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness and subject to the provisions of Chapter 7 of this title, a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, if (A) made at or near the time of the described acts, events, conditions, opinions, or diagnoses; (B) made by, or from information transmitted by, a person with personal knowledge and a business duty to report; (C) kept in the course of a regularly conducted business activity; and (D) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with paragraph (11) or (12) of Code Section 24-9-902 or by any other statute permitting certification. The term "business" as used in this paragraph includes any business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit . . . .

As this Court has previously explained, because our new Evidence Code is comparable to the Federal Rules of Evidence, this Court will "give consideration and great weight to constructions placed on the Federal Rules by the federal courts."[14] And those courts have held that "hospital records, including medical opinions, are .

---

[14] *Curry v. State*, 330 Ga. App. 610, 613 (1) (768 SE2d 791) (2015) (punctuation omitted); *see, e.g.*, *Williams v. State*, 328 Ga. App. 876, 879 (1) n.14 (763 SE2d 261) (2014).

. . admitted under [Federal Rule of Evidence 803 (6)], which expressly permits 'opinions' and 'diagnoses.'"[15] Given this construction of Federal Rule of Evidence 803 (6),[16] the fact that OCGA § 24-8-803 (6) is nearly identically worded,[17] and, as previously noted, the fact that these records were made to facilitate Samuels's

---

[15] *Manocchio v. Moran*, 919 F2d 770, 780 (I) (D) (2) (1st Cir. 1990); *see also United States v. Hall*, 419 F3d 980, 987 (II) (A) (9th Cir. 2005) (holding that medical records from a hospital visit were kept in the ordinary course of business and are "classic exceptions" to the hearsay rule under Federal Rule of Evidence 803 (6)). *Cf. Corbett v. State*, 266 Ga. 561, 565 (468 SE2d 757) (1996) (noting that under Georgia's former business exception rule, (3) which unlike OCGA § 24-8-803 (6) did not expressly permit opinions, hospital records were admissible to the extent they were made in the regular course of business but would constitute hearsay to the extent they contained opinions of third parties not before the court).

[16] *See* Fed. R. Evid. 803 (6) ("The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness . . . [a] record of an act, event, condition, opinion, or diagnosis if . . . the record was made at or near the time by--or from information transmitted by--someone with knowledge; the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; making the record was a regular practice of that activity; all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902 (11) or (12) or with a statute permitting certification; and the opponent does not show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness.").

[17] *See* RONALD L. CARLSON & MICHAEL SCOTT CARLSON, CARLSON ON EVIDENCE 275 (2d ed. 2014) (noting that OCGA § 24-8-803 (6) "closely tracks its federal counterpart").

treatment and not in anticipation of prosecution, the trial court did not err in admitting the hospital records under OCGA § 24-8-803 (6).[18]

2. Samuels also contends that the trial court erred in failing to rebuke the State's prosecutor and failing to provide sufficiently curative instructions when the prosecutor claimed during closing argument that the hospital records indicated Samuels had a history of alcohol abuse. We disagree.

OCGA § 17-8-75 provides that when

> counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

---

[18] *See Hall*, 419 F3d at 987 (II) (A) (holding that medical records from a hospital visit were kept in the ordinary course of business and are "classic exceptions" to the hearsay rule pursuant to Federal Rule of Evidence 803 (6)). *Cf. Thompson v. State*, 332 Ga. App. 204, 208-10 (1) (770 SE2d 364) (2015) (holding that loss-prevention report prepared by store after shoplifting incident was nevertheless not made in anticipation of prosecution and, therefore, was admissible under OCGA § 24-8-803 (6)).

And it is well established that the decision of whether to grant a mistrial because of improper conduct by counsel rests with the trial court, and such decision will not be overturned absent a manifest abuse of discretion.[19] Indeed, this Court has repeatedly held that

> if the trial judge acts immediately, and in the exercise of his discretion takes such action as in his judgment prevents harm to the accused as a result of such improper statements, a new trial will not be granted unless it is clear that such action failed to eliminate from consideration of the jury such improper statements.[20]

In this matter, during closing argument, the State's prosecutor apparently showed a slide to the jury stating that the hospital records indicated that Samuels had a history of alcohol abuse. Samuels's counsel objected, and, during a bench conference, the prosecutor reiterated that the written comment was based on information in the hospital records. Samuels's counsel argued that the records contained no such indication, and the trial court agreed. Consequently, the court instructed the jury as follows:

---

[19] *Campbell v. State*, 329 Ga. App. 317, 317-18 (1) (764 SE2d 895) (2014); *accord Pullin v. State*, 258 Ga. App. 37, 42 (3) (572 SE2d 722) (2002).

[20] *Campbell*, 329 Ga. App. at 318 (1) (punctuation omitted).

11

Ladies and gentlemen of the jury, there is no evidence in this case of past alcohol abuse. There's none. I think there was just a misreading of that hospital record, and you can look at it, but it was just a mistake about what it says. But there's no – there's no evidence in this case about any past alcohol abuse, by the defendant in this case. Okay?

Thereafter, the trial court allowed the prosecutor to resume her closing argument.

On appeal, Samuels argues that the trial court erred in failing to rebuke the State's prosecutor for presenting the above-referenced slide and for providing an insufficient curative instruction. However, Samuels did not object after the court provided the instruction. In fact, a short time later, while discussing another objection, Samuels's counsel stated that the court's instruction "was appropriate for the response about alcohol abuse." And it is well established that "[i]f the trial court's curative instructions are not sufficient, defendant should seek additional relief."[21] This, Samuels failed to do; and this failure waives appellate review of the matter, "including complaints about improper comments in closing argument."[22]

---

[21] *Stubbs v. State*, 315 Ga. App. 482, 484 (2) (727 SE2d 229) (2012) (punctuation omitted); *see Garcia v. State*, 271 Ga. App. 794, 796 (2) (611 SE2d 92) (2005).

[22] *Stubbs*, 315 Ga. App. at 484 (2) (punctuation omitted).

12

But even setting aside Samuels's waiver of the issue, given that the trial court sustained Samuels's objection and specifically instructed the jury that the prosecutor's argument in this regard was not supported by the evidence, Samuels's argument on appeal lacks merit.[23] Indeed, while Samuels claims that the court nevertheless erred by not also rebuking the prosecutor in addition to providing a curative instruction, the Supreme Court of Georgia has held that when "the instruction by the court to the jury to disregard the remarks was full, it in effect amounted to a rebuke of counsel."[24] Accordingly, Samuels's argument in this regard presents no grounds for reversal.

3. Samuels similarly contends that the trial court failed to properly apply OCGA § 17-8-75 when it overruled her objection to the prosecutor's comment during closing argument that the hospital records indicated Samuels was intoxicated. Yet again, we disagree.

---

[23] *See Campbell*, 329 Ga. App. at 318 (1) (holding that trial court did not abuse its discretion when it sustained defendant's objection, rebuked the prosecutor, and instructed the jury to not consider the prosecutor's statement that was not supported by the evidence).

[24] *Ward v. State*, 252 Ga. 85, 89 (2) (311 SE2d 449) (1984); *see also Counts v. Moorehead*, 232 Ga. 220, 221 (1) (206 SE2d 40) (1974).

During the State's closing, the State's prosecutor summarized the evidence against Samuels and argued that "[w]e also have the medical report . . . [and] it says precisely what [defense counsel] referred to in his closing argument: 'Patient presents to E.R. motor vehicle collision and intoxicated. Needs to be cleared to go to jail.'" Shortly thereafter, the prosecutor added: "And a lay person could tell she was intoxicated. That's exactly what the doctor put in the report." Samuels objected, but the trial court overruled the objection.

Samuels now contends that the trial court erred in overruling her objection and, in doing so, compounded its earlier error in admitting the hospital records into evidence. But although it is improper for an attorney during closing arguments to introduce facts that are not in evidence, "counsel may draw reasonable inferences or deductions from the evidence."[25] And as discussed in Division 1, *supra*, the court did not err in admitting the hospital records. Given these particular circumstances, the

---

[25] *Messick v. State*, 276 Ga. 528, 529 (2) (580 SE2d 213) (2003).

14

prosecutor merely made reasonable inferences from properly admitted evidence.[26]

Thus, Samuels's contention in this regard likewise lacks merit.

For all of the foregoing reasons, Samuels's convictions are affirmed.

*Judgment affirmed. Ellington, P. J., and McFadden, J., concur.*

---

[26] *See id.* (holding that prosecutor's statement during closing argument was a proper inference from the evidence and, therefore, did not warrant rebuke and curative instruction under OCGA § 17-8-75); *Tolbert v. State*, 313 Ga. App. 46, 57-58 (5) (720 SE2d 244) (2011) (same).