**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 3, 2014**

# In the Court of Appeals of Georgia

A14A0980. OWENS v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for felony obstruction, possession of a knife during the commission of a felony, and disorderly conduct, Timothy Owens argues that the trial court erred when it admitted recordings of the victim's 911 calls into evidence and that the evidence was insufficient. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted).

So viewed, the record shows that on the early morning of April 22, 2012, the victim called the Newton County 911 center seeking assistance as to a domestic dispute in progress at his home in Covington. The victim placed this first call, which was introduced into evidence and played for the jury, from his cell phone while he was upstairs inside his house. The victim told the operator that Owens had cursed him and slammed the refrigerator door, breaking objects stored inside, such that the victim was afraid to go downstairs in order to leave the house. While remaining connected to the 911 operator, the victim slipped his cell phone into the pocket of his shorts, went downstairs, and left the house, while Owens continued to throw things inside. As the victim left the house, Owens threw a pot at a window. Once outside, wearing only a tank top and shorts (without shoes), the victim told the 911 operator that he would walk around the area until police arrived and that he was "afraid" and "cold" and "c[ould not] live like this" anymore. Shortly afterward, when the operator reported that officers were still "ten more minutes away," the first call was disconnected. The victim immediately called 911 a second time, confirmed that he needed officer assistance, and told the second operator that he had stopped walking

2

in the area because he was fearful that Owens would "start looking for" him. While the victim remained on the line with the operator as instructed, he noted that Owens had a "bad temper," recounted an outburst by Owens earlier in the week, and repeated his description of the refrigerator door and pot-throwing incidents. When the victim told the operator that he could see officers entering the front door of his house, the victim ended the second call.

On arrival, the two officers spoke to the victim, who appeared fearful and was only partially clothed, and then entered the house, where they found Owens in the kitchen washing a knife with an eight-inch blade. As the officers spoke to him, Owens laid down the knife and told them that he was upset because he and the victim were no longer having sex. When one of the officers told Owens that he would have to leave the house because the victim did not want him living there, Owens placed his hands on the breakfast bar, leaned toward the officer, and said "why don't you try to make me leave[?] You can't do it." When the officer unsnapped his taser from its holster and approached Owens, Owens grabbed the knife and threatened the officer with it. The officer then stunned Owens with his taser. At this, Owens became compliant and was taken into custody. He was indicted on two counts of aggravated

assault, four counts of possession of a knife during the commission of a felony, and one count of disorderly conduct.

Before trial, the State proffered the recordings of the victim's 911 calls and noted that it had been unable to locate the victim. The 911 operators were also unavailable. At trial, the trial court ruled that recordings of the victim's 911 calls were admissible as non-testimonial statements of present sense impressions. Owens' objections to this ruling were noted for the record. Portions of the calls concerning Owens's reputation for a bad temper were redacted and not played for the jury. At trial, Owens admitted to being angry and upset on learning that the victim wanted him to leave the house, to slamming the refrigerator door twice, and to grabbing the knife with the intention of throwing it.

A jury found Owens guilty of two counts of felony obstruction, two counts of possession of a knife during the commission of a felony, and one count of disorderly conduct. The trial court declared a mistrial as to the remaining charges. Owens was sentenced to 20 years with five to serve. His motion for new trial was denied.

1. Owens first argues that the trial court violated his constitutional right to confront the witnesses against him when it admitted the 911 calls into evidence even

though neither the victim nor the operators were available to testify at trial. We disagree.

(a) The Sixth Amendment to the United States Constitution as well as the Georgia Constitution guarantees a criminal defendant the right "to be confronted with the witnesses against him[.]" U. S. Constitution, Amend. 6; see also Ga. Const. of 1983, Art. I, Sec. 1, Para. XIV. The Confrontation Clause "bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Davis v. Washington*, 547 U. S. 813, 821 (126 SCt 2266, 165 LE2d 224) (2006), quoting *Crawford v. Washington*, 541 U. S. 36, 53-54 (124 SCt 1354, 158 LE2d 177) (2004).

> [S]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Id. at 822 (footnote omitted). As the Supreme Court of Georgia has noted, telephone calls made to 911 centers may be nontestimonial and therefore admissible at a later

5

trial if "the telephone call is made to avert a crime in progress *or* to seek assistance in a situation involving immediate danger[.]" *Pitts v. State*, 280 Ga. 288, 289-290 (627 SE2d 17) (2006) (citation and footnote omitted; emphasis supplied). "[T]he determination of whether the recording of a 911 phone call is testimonial should be made on a case-by-case basis." Id. at 289.

Here, the evidence supported the trial court's factual determination that both of the victim's calls to 911 were made to seek assistance in the course of a situation involving immediate danger to him. The victim initiated the first call while still in his house and maintained the connection even as he left the house with few clothes and no shoes on in an effort to avoid Owens's threatening presence. When, for reasons which do not appear in the record, the first call ended, the victim immediately called again, reiterating to the second operator that Owens posed a threat to his safety, and remained on the line until officers arrived. The record also shows that the trial court redacted a portion of the victim's statements characterizing Owens as having a "bad temper" and narrating events from earlier that morning, the only portion of the call which might have approached the boundary between non-testimonial and testimonial

6

evidence.[1] See *Pitts*, 280 Ga. at 291 (noting that victim's statement that her husband was "wanted" for violating his parole "came close to providing testimonial evidence") (footnote omitted). Because the record supported the trial court's determination that the primary purpose common to both of the victim's 911 calls was to seek assistance in the course of a situation involving immediate danger to him, and because the trial court properly redacted those portions of the calls arguably involving the victim's narration of past events and his assessment of Owens's character, the court did not err when it concluded that the 911 calls were non-testimonial. Id. at 291 (trial court did not err in admitting 911 call made by victim when "the crime was still ongoing in her immediate presence" such that "her primary purpose remained the prevention of immediate harm to herself").

(b) Once a determination is made that a statement is non-testimonial for purposes of the Confrontation Clause, the statement is admissible if it falls under one or more exceptions to the rule against hearsay. See *Thomas v. State*, 284 Ga. 540, 542 (668 SE2d 711) (2008) ("Once a determination is made that a statement is nontestimonial in nature, 'normal rules regarding the admission of hearsay apply,'"

---

[1] Owens does not assert that the trial court should have redacted greater or different portions of the calls.

quoting *Pitts*, 280 Ga. at 288). We review a trial court's decision to admit or exclude evidence only for an abuse of discretion. *Cobb v. State*, 302 Ga. App. 821, 823 (2) (692 SE2d 65) (2010).

Owens argues that the trial court erred by finding that the calls fell under exceptions to the hearsay rule. One exception at issue here is that for present sense impressions under OCGA § 24-8-803 (1),[2] which authorizes the admissibility of "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter," whether or not the declarant is or has been available for cross-examination. "The underlying theory of this exception is that the substantial contemporaneity of the event and the statement negate the likelihood of deliberate or conscious misrepresentation." *United States v. Holmes*, 498 Fed. Appx. 923, 924 (11th Cir. 2012) (citation and punctuation omitted); see also *United States v. Boyce*, 742 F.3d 792, 797 (III) (B) (7th Cir. 2014).

The entirety of both calls at issue here took place while the victim was perceiving the danger posed to him by Owens, including not only the threat of violence so long as the victim remained in his own house, but also the possibility that

---

[2] "Because OCGA § 24-8-803 mirrors Rule 803 of the Federal Rules of Evidence, we will look to case law from federal courts within the Eleventh Circuit for guidance in interpreting that statute. See Ga. L. 2011, p. 99, § 1." *Ware v. Multibank 2009-1 RES-ADC Venture*, 327 Ga. App. 245, 249 (2), n. 11 (758 SE2d 145) (2014).

Owens would emerge from the house and attack the victim even as he waited for police to arrive. The trial court's conclusion that the victim was rendering present sense impressions of an ongoing emergency is also bolstered by the fact that the victim ended the second call when officers arrived on the scene, thereby suggesting that the victim only then perceived that the most immediate danger had passed. Taken as a whole, these circumstances suggest that the victim was responding throughout the incident to his reasonable perception of a real and present danger. It follows that the trial court did not abuse its discretion when it concluded that the victim's 911 calls were admissible under the present-sense impression exception to the hearsay rule. See *Holmes*, 498 Fed. Appx. at 925 (affirming trial court's admission of recorded 911 calls as present-sense impressions); *United States v. Campbell*, 782 F. Supp. 1258, 1261 (N. D. Ill. 1991) (even though shooting incident was complete when a 911 call was made, a recording of the call was admissible as a present-sense impression when the declarant "made the telephone call, describing the shooting and the defendant's appearance almost immediately after defendant fled the store"; any delay "between the event and the telephone call does not suggest that there was time for [the declarant] to consciously reflect and to fabricate a story").

(c) Because we conclude that the 911 calls were admissible under the present-sense impression exception to the rule against hearsay, we need not address Owens's argument that the calls were inadmissible as excited utterances under OCGA § 24-8-803 (2).

2. Although Owens challenges the sufficiency of the evidence against him, both officers testified at trial that Owens threatened them with an eight-inch knife during the commission of their duties, and Owens himself admitted to slamming the house's refrigerator door twice, breaking items stored in the door, while the victim remained in the house. This evidence was sufficient to sustain his conviction on two counts of felony obstruction of a law enforcement officer, two counts of possession of a knife during the commission of a crime, and one count of disorderly conduct. See OCGA §§ 16-11-106 (defining possession of a knife "having a blade of three or more inches in length" during the commission of a felony), 16-10-24 (b) (defining felony obstruction of an officer as "knowingly and willfully" obstructing that officer "in the lawful discharge of his official duties by offering or doing violence to" such officer), 16-11-39 (a) (1) (defining disorderly conduct as acting "in a violent or tumultuous manner toward another person whereby the property of such person is placed in danger of being damaged or destroyed"); *Jackson*, supra.

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur*.