**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 28, 2022**

# In the Court of Appeals of Georgia

A22A0076. GRIMES v. THE STATE.

RICKMAN, Chief Judge.

In this probation revocation action, we granted Sammy Grimes's application for discretionary appeal in order to review the trial court's order in which it revoked two years of his probation. Grimes argues that the revocation was based upon inadmissible hearsay evidence and violated his due process right to confront his accusers. Because we conclude that certain hearsay evidence was erroneously admitted and that the admissible evidence presented at the hearing was insufficient to support the revocation, we reverse.[1]

---

[1] We note that jeopardy does not attach to a probation revocation hearing so as to bar future proceedings based upon the same conduct. See U. S. Const., Art. I, Sec. I, Par. XVIII; *Smith v. State*, 171 Ga. App. 279, 282 (319 SE2d 113) (1984) ("[A] probation revocation hearing is similar to a preliminary hearing, and jeopardy does not attach at a preliminary hearing."). Cf. *Edvalson v. State*, 339 Ga. App. 348, 351 (793 SE2d 545)

A trial court may revoke a probated sentence if "the evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or violations of the conditions of probation alleged." *Caldwell v. State*, 327 Ga. App. 471, 472 (758 SE2d 325) (2014) (punctuation omitted) (citing OCGA § 42-8-34.1 (b)). The trial court sits as the trier of fact in revocation proceedings. See *Gaddis v. State*, 310 Ga. App. 189, 189-190 (1) (712 SE2d 599) (2011). "This Court will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court." *Caldwell*, 327 Ga. App. at 472 (punctuation omitted). Thus, we will affirm a probation revocation judgment if the record includes "some competent evidence to show that the defendant violated the terms of his probation in the specific manner charged." Id. This Court reviews questions of law, however, de novo. Id.

The evidence adduced at the probation revocation hearing shows that in 2019, Grimes pled guilty to aggravated assault, second-degree arson, and second-degree criminal damage to property, and the trial court imposed a total sentence of one year in prison, to be followed by 11 years on probation. As relevant here, the conditions

(2016) ("[J]eopardy does not attach, and the constitutional prohibition against double jeopardy can have no application, until a defendant is put to trial before the trier of facts, whether the trier be a jury or a judge.") (citation and punctuation omitted).

of his probation prohibited Grimes from: (i) violating any criminal laws; and (ii) engaging in violent contact with two named victims.

In February 2020, the State petitioned to revoke Grimes's probation on grounds that he committed the offenses of aggravated assault and terroristic threats when he appeared at the house of the two named victims and threatened to kill and/or hurt them. During the ensuing probation revocation hearing, the victims did not appear and did not testify. Rather, the State tendered a recording of the 911 call made by one of the named victims who stated that her "boyfriend," who she did not identify,[2] was at her home and was threatening to kill everyone in the house. The victim mentioned that there were several children in the home, and that the perpetrator was high or drunk and acting "crazy."

The police officer who responded to the call testified at the hearing. She stated that in January 2021, she was dispatched to Mitchell's home following a 911 call and arrived approximately eight minutes later. Over Grimes's objections, the officer further testified that when she arrived at the victim's home, the victim told her that

---

[2] At some point during the 911 call, the victim did identify Grimes as the perpetrator. The trial court, however, did not consider this portion of the 911 call during the hearing because it granted Grimes's objection and excluded everything on the recording after the 1:13 minute mark on the grounds that it was testimonial hearsay. The State does not challenge that ruling.

Grimes "beat on the garage," entered her home, brandished a steak knife, and threatened to kill her and her brother (who was the second named victim with whom Grimes was to have no violent contact). Grimes was not at the house when the officer arrived.

Grimes objected to this testimony as hearsay and on the ground that it violated his due process right to confront the witnesses against him. The trial court overruled Grimes's objections upon concluding that the victim's statements were admissible under the "present sense impression" exception to the hearsay rule.

This Court granted Grimes's application for interlocutory appeal in order to determine whether the hearsay evidence was erroneously admitted and, if so, whether the evidence against Grimes was insufficient to revoke his probation. After answering both of these questions in the affirmative, we are constrained to reverse the trial court's revocation.

The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, guarantees a criminal defendant the right "to be confronted with the witnesses against him." Under the Confrontation Clause, testimonial hearsay is admissible against a criminal defendant only when the witness is unavailable to testify, and the defendant had a prior opportunity to cross-examine

4

the witness. *Crawford v. Washington*, 541 U. S. 36, 53 (III) (A), 59 (IV), 68 (V) (C) (124 SCt 1354, 158 LE2d 177) (2004).

Nevertheless, in a probation revocation hearing, the right to confront adverse witnesses arises not under the Confrontation Clause, but rather as a matter of due process, which is less stringent than the confrontation guarantee in a criminal trial. See *Williams v. Lawrence*, 273 Ga. 295, 298 (540 SE2d 599) (2001) ("Evidence that would violate the Sixth Amendment or would be inadmissible hearsay if presented at a criminal trial may, in proper circumstances, be considered at a parole or probation revocation hearing without violating the due process right to confrontation.") (citation and punctuation omitted). "[T]he minimum requirements of due process include the right to confront and cross-examine adverse witnesses (*unless the hearing officer specifically finds good cause for not allowing the confrontation*)." (Citation and punctuation omitted; emphasis in original.) *Ware v. State*, 289 Ga. App. 860, 862 (658 SE2d 441) (2008) (physical precedent only); see *Williams*, 273 Ga. at 298. To that end, "[s]ome specific objection or invocation of the due process right of confrontation [is] necessary in order to trigger consideration of the secondary issue of whether there was good cause for not allowing the confrontation, which usually requires examination of both the reasons for the State's failure to produce the

5

declarant and the reliability of the hearsay evidence." *Williams*, 273 Ga. at 298. The burden of proving that hearsay evidence bears a sufficient indicia of reliability to withstand due process scrutiny lies with the State. Cf. *Miller v. State*, 266 Ga. 850, 853 (472 SE2d 74) (1996) (recognizing that the proponent of hearsay evidence in the face of a Confrontation Clause objection has the burden of proving that it bears sufficient indicia of reliability to withstand scrutiny).

Here, Grimes invoked through objection his due process right to confront the witnesses against him. Nevertheless, the trial court did not examine — nor did the State present — any evidence to explain why the victims did not attend the hearing.

Moreover, the State failed to meet its burden of proving that the hearsay evidence was reliable. During the hearing, the State asserted, and the trial court agreed, that the responding officer's testimony fell within the present sense impression exception to the general rule excluding hearsay, thus presumably rendering the testimony reliable.[3] See OCGA § 24-8-803 (1); see also *Hagen v. State*, 169 Ga. App. 259, 259 (2) (312 SE2d 357) (1983) ("The exceptions to the rule

---

[3] The Georgia Rules of Evidence apply in probation revocation hearings. See OCGA § 24-1-2 (b).

6

excluding hearsay are exceptions because, for one reason or another, remarks which fall under that penumbra are deemed reliable.").

A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." OCGA § 24-8-803 (1); see *Varner v. State*, 306 Ga. 726, 731 (2) (b) (ii) (832 SE2d 792) (2019) ("To be admitted under this exception, the statement must describe or explain an event or condition that is personally witnessed by the declarant and is essentially contemporaneous to the statement.") (punctuation omitted). "The underlying theory of [the present sense impression] exception is that the substantial contemporaneity of the event and the statement negate the likelihood of deliberate or conscious misrepresentation." (Citation and punctuation omitted.) *Owens v. State*, 329 Ga. App. 455, 458 (1) (b) (765 SE2d 653) (2014). Indeed, "[t]he idea of immediacy lies at the heart of the exception, thus, the time requirement underlying the exception is strict because it is *the* factor that assures trustworthiness." (Emphasis in original; citations and punctuation omitted.) *U.S. v. Green*, 556 F.3d 151, 155-56 (3d. Cir. 2009).[4]

_____

[4] OCGA § 24-8-803 (1) was enacted in 2011 as part of the new Evidence Code, much of which was borrowed from the Federal Rules of Evidence. "[W]here the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly

Here, although the victim's statement to the 911 operator was made while the victim "was perceiving the event or condition or immediately thereafter," her later statement given to the responding officer was not sufficiently contemporaneous with the event to come within the present sense impression exception to the hearsay rule.[5] See *United States v. Bates*, 960 F.3d 1278, 1291 (II) (C) (11th Cir. 2020) ("While the statements [appellant] made on the 911 call were made while or immediately after [he] perceived the event, the later statement to [a federal agent at the scene] is simply too far removed to be a present sense impression.") (punctuation omitted); *U.S. v. Manfre*, 368 F.3d 832, 840 (II) (B) (8th Cir. 2004) (holding that statement was not a present sense impression when, "[a]t the very least, there was an intervening walk or drive" between the event and the time of the statement). Cf. *Legree v. State*, 344 Ga. App. 793, 798 (1) (812 SE2d 68) (2018) (holding that the trial court's admission of statements by the unavailable victim and her minor child to the responding officer infringed on appellant's rights under the Confrontation Clause, but the victim's

intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance." (Citation and punctuation omitted.) *Jenkins v. State*, 303 Ga. 314, 317 (1) (812 SE2d 238) (2018).

[5] The State does not assert, and the record is not sufficient to establish, that the testimony fell within any other exception to the hearsay rule.

8

statements during the 911 call, made while the incident was ongoing, were present sense impressions). Compare *Owens*, 329 Ga. App. at 459 (1) (b) (holding that two separate statements made to the 911 operator were admissible as present sense impressions because "[t]he entirety of both calls . . . took place while the victim was perceiving the danger posed to him by [appellant]").

Because Grimes specifically invoked his due process right of confrontation, and because the trial court failed to examine the reasons for the State's failure to produce the victims and to ensure the reliability of the hearsay evidence, the responding officer's testimony was erroneously admitted. See *Ware*, 289 Ga. App. at 863; see also *United States v. Body*, 791 Fed. Appx. 807, 809 (III) (A) (11th Cir. 2019) (holding the district court committed reversible error by relying on hearsay during appellant's supervised release revocation hearing because "[t]he government did not offer any explanation for its failure to present [informing] witnesses . . ., nor did the court make any determination regarding the reliability of the hearsay evidence introduced through the detective"); *U.S. v. Frazier*, 26 F.3d 110, 114 (III) (A) (11th Cir. 1994).[6]

---

[6] We note generally that the Federal Rules of Evidence do not apply to federal revocation proceedings. See *Frazier*, 26 F3d at 112-113 (III) (A).

Further, the competent evidence — which consisted solely of the admitted portion of the 911 call — failed to identify Grimes as the perpetrator, and was thus insufficient to establish by a preponderance of the evidence that Grimes violated a condition of his probation. See *Ware*, 289 Ga. App. at 863; *Hunt v. State*, 327 Ga. App. 692, 693-694 (1) (761 SE2d 99) (2014); see also *Henley v. State*, 317 Ga. App. 776, 777-778 (1) (a) (732 SE2d 836) (2012) (decided under the former Evidence Code). Consequently, we are constrained to reverse.

*Judgment reversed. Miller, P. J., and Hodges, J., concur*.